U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2012 NOV -2  A II: 39

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  **No. 1:12-cr-33-01-PB** |
| | ) |
| **CRAIG FAULKNER** | ) |

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United

States of America by its attorney, John P. Kacavas, the United States Attorney for the District of

New Hampshire, and the defendant, Craig Faulkner, and the defendant's attorney, Joseph

Provanzano, Esquire, enter into the following Plea Agreement:

1. <u>The Plea and The Offense</u>.

The defendant agrees to plead guilty to Counts One, Two, Three, and Nine of an

Indictment. Count One charges the defendant with possession of an unregistered firearm, in

violation of 26 U.S.C. §§ 5861(d), 5841 and 5871. Counts Two and Three charge the defendant

possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Count Nine

charges the defendant with unlawful distribution and aiding and abetting the distribution of

Oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code,

Section 841(a)(1) and Title 18, United States Code, Section 2.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulations identified in section 6 of this agreement.

-1-

2. The Statutes and Elements of the Offenses.

A. Count One: 26 U.S.C.§ 5861(d)

Title 26, United States Code, Section 5861(d) provides, in pertinent part:

It shall be unlawful for any person-

(d)     to receive or possess a firearm which is not registered to him in the National
        Firearms Registration and Transfer Record.

26 U.S.C.§ 5861(d)(West 2011).

The defendant understands that the offense alleged in count one of the indictment to

which he is pleading guilty has the following elements, each of which the government would

have to prove beyond a reasonable doubt at trial:

First, that the defendant knowingly possessed the firearm specified in Count One of the
indictment;

Second, that the firearm was not registered to the defendant in the National Firearms and
Transfer Record; and

Third, that the defendant knew of the characteristics of the firearm, that is, that it was a
shotgun having a barrel of less than 18 inches in length, that brought it within the scope of the
National Firearms Act.[1]

*Staples v. United States*, 511 U.S. 600, 619 (1994).

B. Counts Two and Three: 18 U.S.C. §922 (g)(1)

Title 18, United States Code, Section 922 (g)(1) provides, in pertinent part:

It shall be unlawful for any person-

        (1) who has been convicted in any court of a crime punishable by
        imprisonment for a term exceeding one year; to ... possess in or affecting
        commerce, any firearm or ammunition;

_____

[1]It does not matter whether the defendant knew that the firearm was not registered or had
to be registered.

-2-

18 U.S.C. § 922(g)(1)(West 2011).

The defendant understands that the offenses alleged in counts two and three of the indictment to which he is pleading guilty each have the following elements, each of which the government would have to prove beyond a reasonable doubt at trial:

First, that the defendant knowingly possessed the firearms[2] as described in Counts Two and Three of the Indictment.

Second, that at the time he possessed the firearms, the defendant had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year.

Third, that the firearms described in Counts Two and Three of the Indictment were connected with interstate commerce. This means that the firearms, at any time after they were manufactured, moved from one state to another. The travel need not have been connected to the charges in the indictment and need not have been in furtherance of any unlawful activity.

*United States v. Bartelho*, 71 F.3d 436, 439 (1st Cir. 1995).

C. Count Nine: 21 U.S.C. §841(a)(1) and 18 U.S.C. § 2

18 U.S.C. §2(a) provides, in pertinent part:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
18 U.S.C. §2(a)(West 2011).

Title 21, United States Code, Section 841(a)(1) provides, in pertinent part:

(a) Unlawful acts

---

[2]The term "firearm" means any weapon which will or is designed or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon.

-3-

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally–

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance

21 U.S.C. §841(a)(1)(West 2011).

The defendant understands that the offense alleged in count nine of the indictment to

which he is pleading guilty has the following elements, each of which the government would

have to prove beyond a reasonable doubt at trial:

First, that on the date charged in Count Nine of the Indictment, the defendant distributed the controlled substance Oxycodone;

Second, that the defendant knew that the substance was Oxycodone; and

Third, that the defendant knowingly and intentionally distributed the controlled substance.

The elements of aiding and abetting under Title 18, United States Code, Section 2 are:

First, that someone other than the defendant committed the crime; and

Second, that the defendant willfully associated himself in some way with the crime and willfully participated in it as he would in something he wished to bring about.

*United States v. Spinney*, 65 F.3d 231 234-35 (1st Cir. 1995).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government

would prove the following facts and those facts would establish the elements of the offenses

beyond a reasonable doubt:

During 2011, as part of an ongoing investigation into firearms and drug trafficking in the

city of Manchester, New Hampshire, the Federal Bureau of Investigation (FBI) utilized a reliable

-4-

Confidential Human Source (CHS) to make several firearms purchases from the defendant as well as a series of narcotics purchases from the defendant and his co-defendants, Craig Ford, Wendy Ford and Sharon Cote, from various locations in the city, including "No Limits Cycles," a motorcycle shop owned by the defendant located on Elm Street, Manchester, NH.

A.    Count One - March 2, 2011 Possession of An Unregistered Firearm

On March 1, 2011, the CHS, acting at the direction of the FBI, went to No Limits Cycles to meet the defendant. The defendant told the CHS that he could sell the CHS a 9mm handgun and a .357 handgun and, if unable to get either of those firearms, would sell the CHS a sawed off 20 gauge shotgun, which the defendant had previously shown the CHS.

On March 2, 2011, the defendant met with the CHS at No Limits Cycles. While meeting, the defendant received a text from an individual who advised the defendant that he would not sell the above-referenced handguns to the defendant.  As a result, the defendant told the CHS he would sell him the 20 gauge shotgun for $80.00, which he retrieved from the second floor of the shop and gave to the CHS. The defendant told the CHS that he had wiped the gun down with alcohol and instructed the CHS to throw the firearm in the river if the CHS used the gun. The firearm was loaded, which the CHS did not realize at the time. The CHS paid the defendant $80, exited the store, and relinquished the firearm to the FBI.  The firearm was determined to be a W.M. Enders, Model Oak Leaf, 16 gauge shotgun, serial number 106BT.

The firearm sold by the defendant to the CHS has a barrel length of approximately 10 1/4". The overall length of the firearm is approximately 16 5/8". The Bureau of Alcohol, Tobacco, Firearms and Explosives (BATFE) determined that the firearm falls under the provisions of the National Firearms Act since a "firearm" is described as (1) a shotgun having a

-5-

barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length. *See* 26 U.S.C. § 5845(a). The BATF conducted a records check in the National Firearms Registry and determined that the defendant had not registered the shotgun.

### B. Count Two - August 31, 2011 Possession of a Firearm by a Convicted Felon

On July 18, 2005, the defendant was convicted by the Hillsborough County (NH) Superior Court for Sale of a Controlled Drug (Oxycodone) in violation of NH R.S.A. 318-B:2 for which he was sentenced to two to four years imprisonment.

On August 30, 2011, the defendant agreed to sell the CHS two firearms, a .22 caliber pistol for $175 and a .380 pistol for $250.00.

On August 31, 2011, the CHS met the defendant at No Limits Cycles. Shortly thereafter, the defendant left the store and was surveilled by law enforcement to Rules Cycles, a motorcycle shop in Manchester, NH. While there, the defendant obtained a firearm from an unknown male and returned to No Limits Cycles where he handed the CHS the firearm, later determined to be a Walther, Model Sport Mark II, .22 caliber pistol, serial number 58435C. The defendant told the CHS that the weapon was good for "up close and personal use" and that "if you shoot someone in the head it will not make a mess." The CHS paid the defendant $200.00, left the store and provided the firearm to the FBI.

The BATFE determined that each of the firearms was manufactured outside of New Hampshire and has traveled in interstate commerce.

-6-

C.     Count Three - September 1, 2011 Possession of a Firearm by a Convicted Felon

On September 1, 2011, the CHS went to No Limits Cycle to purchase a second firearm from the defendant for $250.00. After the CHS arrived, the defendant left the store and was again surveilled to Rules Cycles, where he entered the store. He was observed leaving the store shortly after with an object in his hand, which he placed into a saddlebag attached to his motorcycle. The defendant returned to No Limits Cycles where he gave the firearm to the CHS, who in turn paid the defendant $250. The CHS left the store and relinquished the firearm to the FBI. The firearm was later determined to be a LLAMA .380 caliber handgun, serial number A52800. The BTAF determined the firearm was manufactured outside of New Hampshire and has traveled in interstate commerce.

D.     Count Nine - March 16, 2011 Oxycodone Buy

On March 16, 2011, acting at the direction of the FBI, the CHS arranged to purchase ten 30 mg Percoset pills for $300 from the defendant at No Limits Cycles. The CHS was surveilled to the shop where the CHS met the defendant and handed him $300. Soon after, co-defendant Craig Ford arrived and handed the suspected pills, pre-packaged in a heat-sealed bag, to his mother, co-defendant Wendy Ford. Wendy Ford then handed the package to the CHS. The CHS left the shop, met with the FBI and relinquished the drugs. The FBI determined the package contained only seven pills, not the ten pills the CHS had arranged to purchase. As a result, the CHS went back to No Limits Cycles and spoke with the defendant and Wendy Ford about the missing pills, however they told the CHS that there was nothing they could do as Craig Ford had brought the pills pre-packaged. The seven pills were submitted to the Drug Enforcement Lab (lab) and tested positive for 30 mg Oxycodone tablets.

-7-

4. Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offenses are:

1.    Count One: 26 U.S.C.§ 5861(d)

A.    A maximum prison term of 10 years (26 U.S.C. §5871);

B.    A maximum fine of not more than $10,000 (26 U.S.C. §5871); and

C.    A term of supervised release of not more than three years. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. §3583).

2.    Counts Two and Three: 18 U.S.C. §922 (g)(1)

A.    A maximum prison term of 10 years;

B.    A maximum fine of $250,000 (18 U.S.C. §3571); and

C.    A term of supervised release of at least two years but not more than three years. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. §3583).

3.    Count Nine: 21 U.S.C. §841 (a)(1) and 18 U.S.C. §2(a)

A.    A maximum prison term of 30 years (21 U.S.C. §841(b)(1)(C))

B.    A maximum fine of $2,000,000 (21 U.S.C. §841(a)(1)); and

C.    A term of supervised release of at least six years and not more than life. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. §3583).

The defendant also understands that he will be required to pay a special assessment of $400, $100 for each count of conviction, at or before the time of sentencing; and that the Court may order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

     5. <u>Sentencing and Application of the Sentencing Guidelines.</u>

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw his guilty plea if the applicable advisory guideline range or his sentence is other than he anticipated, except as expressly provided in this Plea Agreement.

The defendant also understands that the United States and the United States Probation Office shall:

    A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

    B.    Respond to questions from the Court;

    C.    Correct any inaccuracies in the pre-sentence report;

    D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range within the advisory Sentencing Guidelines that he may have received from any

source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the government and the defendant agree that:

(A)    The government will recommend that the defendant be sentenced to the low end of the United States Sentencing Guideline range.

The defendant understands that the Court is not bound by the foregoing agreement and, with the aid of a pre-sentence report, the court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility

-10-

for the offense. The United States, however, may oppose any adjustment for acceptance of

responsibility if the defendant:

- A.   Fails to admit a complete factual basis for the plea at the time he is
       sentenced or at any other time;

- B.   Challenges the United States' offer of proof at any time after the plea is
       entered;

- C.   Denies involvement in the offense;

- D.   Gives conflicting statements about that involvement or is untruthful with
       the Court, the United States or the Probation Office;

- E.   Fails to give complete and accurate information about his financial status
       to the Probation Office;

- F.   Obstructs or attempts to obstruct justice, prior to sentencing;

- G.   Has engaged in conduct prior to signing this Plea Agreement which
       reasonably could be viewed as obstruction or an attempt to obstruct
       justice, and has failed to fully disclose such conduct to the United States
       prior to signing this Plea Agreement;

- H.   Fails to appear in court as required;

- I.   After signing this Plea Agreement, engages in additional criminal conduct;
       or

- J.   Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any

of the reasons listed above, the United States does not recommend that he receive a reduction in

his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the

offense level if it finds that he has not accepted responsibility.

-11-

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8. Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A.    To plead not guilty or to maintain that plea if it has already been made;

B.    To be tried by a jury and, at that trial, to the assistance of counsel;

C.    To confront and cross-examine witnesses;

D.    Not to be compelled to provide testimony that may incriminate him; and

E.    To compulsory process for the attendance of witnesses to testify in his defense.

. The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the

presence of counsel, his answers will be used against him in a prosecution for perjury or making

false statements.

9. Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.      Is entering into this Plea Agreement and is pleading guilty freely and
        voluntarily because he is guilty;

B.      Is entering into this Plea Agreement without reliance upon any promise of
        benefit of any kind except as set forth in this Plea Agreement;

C.      Is entering into this Plea Agreement without threats, force, intimidation, or
        coercion;

D.      Understands the nature of the offense to which he is pleading guilty,
        including the penalties provided by law; and

E.      Is completely satisfied with the representation and advice received from
        his undersigned attorney.

10. Scope of Agreement.

        The defendant acknowledges and understands that this Plea Agreement binds only the

undersigned parties and cannot bind any other non-party federal, state or local authority. The

defendant also acknowledges that no representations have been made to him about any civil or

administrative consequences that may result from the guilty plea. The defendant understands

such matters are solely within the discretion of the specific non-party government agency

involved. The defendant further acknowledges that this Plea Agreement has been reached

without regard to any civil tax matters that may be pending or which may arise involving the

defendant.

-13-

11. Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

12. Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Indictment in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13.     Forfeiture of Firearms

The defendant, Craig Faulkner, agrees to immediately and voluntarily forfeit to the United States his interest, if any, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), as a result of his guilty plea, including, but not limited to:

A)      one W.M. Enders, Model Oak Leak, 16 gauge shotgun, serial number 106BT;

B)      one Walther, Model Sport Mark II, .22 caliber pistol, serial number 58435C; and

C)      one Llama, .380 caliber pistol, serial number A52800.

The defendant agrees and consents to the forfeiture of his interest in these assets pursuant to any criminal, civil and/or administrative forfeiture proceeding brought to forfeit these properties.

-14-

The defendant agrees to waive all constitutional, statutory, and any other challenges in any manner, including, without limitation, by direct appeal and/or habeas corpus, to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including the following: (1) the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the U.S. Constitution; (2) failure to comply with any and all requirements of Fed. R. Crim. P. 11(b)(1)(J) pertaining to the Court's advice at the change of plea hearing; and, (3) failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.3 and 43(a) regarding notice of the forfeiture in the charging instrument and announcement of the forfeiture at sentencing and incorporation of the forfeiture in the judgment. The defendant further acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

The defendant waives and releases any and all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not. The defendant agrees to hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this case.

The defendant acknowledges that all property to be forfeited under this section is subject to forfeiture as either proceeds of illegal conduct, or property facilitating illegal conduct.

-15-

14. Waivers.

A. Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or

sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and

voluntarily waives his right to challenge on direct appeal:

1.    His guilty plea and any other aspect of his conviction, including, but not
      limited to, adverse rulings on pretrial suppression motion(s) or any other
      adverse disposition of pretrial motions or issues; and

2.    The sentence imposed by the Court if within, or lower than, the guideline
      range determined by the Court, or if it is imposed pursuant to a minimum
      mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new

legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea

Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel in

the negotiation of this Plea Agreement or at the sentencing hearing.

B. Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or

sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering

into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally

challenge:

1.    His guilty plea, except as provided below, and any other aspect of his
      conviction, including, but not limited to, adverse rulings on pretrial
      suppression motion(s) or any other adverse disposition of pretrial motions
      or issues; and

2.    The sentence imposed by the Court if it falls within, or lower than, the
      guideline range as determined by the Court, or if it is imposed pursuant to

-16-

a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel in the negotiation of the Plea, Plea Agreement or the sentencing hearing. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant to pursue an appeal s authorized by law.

15.  No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

-17-

16. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17. Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

JOHN P. KACAVAS
United States Attorney

Date: __11·2·12__

By_____

Jennifer Cole Davis
Assistant U.S. Attorney
NH Bar Association # 10222
53 Pleasant St., 4th Floor
Concord, NH 03301
jennifer.c.davis@usdoj.gov

The defendant, Craig Faulkner, certifies that he has read or has had read to him this 19-page Plea Agreement and that he fully understands and accepts its terms.

Date: __11/2/12__

_____
Craig Faulkner, Defendant

-18-

I have read and explained this 19-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: _____

Joseph Provanzano, Esq.
Attorney for Craig Faulkner

-19-